UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ROLANDO OTERO,                      )
                                    )
            Plaintiff,              )
                                    )
        v.                          )   Civil Action No. 14-2004 (BAH)
                                    )
DEPARTMENT OF JUSTICE, *et al.*,    )
                                    )
            Defendants.             )
_____ )

## **MEMORANDUM OPINION**

The plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, and the Privacy Act, *see* 5 U.S.C. § 552a, against the United States Department of Justice ("DOJ"), seeking information from the Federal Bureau of Investigation ("FBI") about himself, *see generally* Defs.' Mem. of P. & A. in Support of Defs.' Mot. for Summ. J. ("Defs.' Mem."), Ex. 1 ("Hardy Decl."), Ex. A, ECF No. 14-3. Pending before the Court is the defendants' Motion for Summary Judgment, ECF No. 14, which, for the reasons discussed below, is granted.[1]

---

[1] The relief sought by the plaintiff – release and amendment of records maintained by the FBI – is available under the FOIA and the Privacy Act. Consequently, the plaintiff's claims under the Administrative Procedure Act and for mandamus relief are summarily dismissed. *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 66 (D.D.C. 2013) (dismissing mandamus claim which duplicates relief plaintiff sought under its FOIA claim); *Kenney v. U.S. Dep't of Justice*, 603 F. Supp. 2d 184, 190 (D.D.C. 2009) (dismissing claim for judicial review under the APA where improper withholding of agency records is reviewable under the FOIA). In addition to the defendants' pending motion, the plaintiff has moved for clarification, ECF No. 50, and for an extension of time, ECF No. 54, both of which motions are denied as moot.

1

I. BACKGROUND

In connection with this litigation, FBI staff conducted "[a] thorough review of the many years of correspondence" with the plaintiff, and concluded that his prior FOIA request had been "fulfilled appropriately." Hardy Decl. ¶ 5. This review also revealed that the plaintiff "still owes $20.10 for duplication fees associated with [the] June 2000 release" of records responsive to FOIPA No. 430046-001. *Id*. ¶ 5 n.2; *see id*., Ex. A (Letter to the plaintiff from John M. Kelso, Jr., Chief, Freedom of Information-Privacy Acts Section, dated June 7, 2000 at 2). Only two FOIA requests are relevant to this civil action: the first submitted on June 18, 2012, and the second on August 8, 2014. *See* Am. Compl. at 8. The plaintiff's Privacy Act claim pertains to his efforts, beginning in 1997, to remove an allegedly false "'warning' stamped on top of his [FBI] file [suggesting] that he was an infected person or carrier of the AIDS/HIV virus." *Id*. at 7.

The plaintiff addressed his 2012 FOIA request to the FBI's Miami Field Office and sought "[c]opies of [his] U.S. Passport and the Naturalization for U.S. Citizenship Certificate." Hardy Decl. ¶ 8; *id*., Ex. C at 1. Field Office staff forwarded the request to the FBI's headquarters in Washington, DC ("FBIHQ") for processing. *Id*. ¶ 9. FBIHQ staff acknowledged receipt of the request, which was assigned FOIPA No. 1193637-000, by letter dated July 2, 2012. *Id*.; *see id*. Ex. D.

In response to the 2012 FOIA request, on "March 5, 2014, the FBI released seven (7) pages of responsive material . . . with no redactions." *Id*. ¶ 12; *see id*., Ex. G.[2] The plaintiff timely filed an administrative appeal of the FBI's determination to the DOJ's Office of Information Policy ("OIP"), *id*. ¶ 13, and OIP assigned the matter a tracking number, AP-2014-

---

[2] The FBI did not address the plaintiff's request for a waiver of fees, but nonetheless assessed no fees and released these seven pages of records at no charge to plaintiff. *See* Hardy Decl. ¶ 12 & n.5.

2

02553, *see* Am. Compl. Ex. F. He not only challenged the FBI's determination, but also mentioned additional items described by the FBI's declarant as follows:

> First, he claimed that the FBI had improperly withheld agency records. He referenced and included his FOIPA request of November 15, 1996, and appeared to be untimely appealing the withholding of those records. Second, he claimed that the FBI had improperly failed to correct his records under the Amendment request. Third, he appeared to claim that the FBI needed to correct another aspect of his record and that the FBI did not follow correct extradition procedures in his arrest. Fourth, he appeared to be making a new request for records related to the Top Ten Most Wanted. This appeal letter contained multiple exhibits of correspondence from former FOIPA requests, as well as FBI documents that had been released to Plaintiff.

Hardy Decl. ¶ 13; *see generally id.*, Ex. H. OIP affirmed, concluding that the FBI had "conducted an adequate, reasonable search for responsive records subject to the [FOIA]." Am. Compl., Ex. G at 1. With respect to the "various additional records" the plaintiff sought, OIP advised that the plaintiff could "not on appeal expand the scope of [his] original request, which was limited to a copies of [his] U.S. Passport and [his] 'Naturalization for U.S. Citizenship Certificate.'" *Id.*, Ex. G at 1. Rather, OIP suggested that the plaintiff submit a new FOIA request to the FBI. *Id.*, Ex. G at 1. Similarly, insofar as the plaintiff sought "amendment of the medical information maintained in the FBI's files," OIP advised the plaintiff to "make an amendment request directly to the FBI" under the Privacy Act. *Id.*, Ex. G at 1.

By letter dated August 8, 2014, the plaintiff submitted a new FOIA request to the FBI. Hardy Decl. ¶ 16. Contained therein was a request for amendment of FBI records. *See id.*, Ex. K at 3, 7-10. The FOIA portion of this second request, which was assigned FOIPA No. 1304654-000, *see id.*, Ex. L, sought "his entire FBI file from January 1, 1990, through January 1, 2000[,] copies of floppy discs, computer programs, documents, and files that the FBI seized," as well as "copies of all documents and posters related to the 'Ten Most Wanted,'" *id.* ¶ 16; *see id.*,

3

Ex. K at 1, 4-6, 10. The FBI assigned plaintiff's request for amendment of records a separate tracking number, FOIPA No. 1308572-000. *Id*. ¶ 18; *see id*., Ex. M.

FBI staff conducted a search of the Central Records System using variations of the plaintiff's name and potential aliases as search terms. *Id*. ¶ 29. The FBI responded to the plaintiff's 2014 FOIA request by letter, dated January 21, 2015, advising "that search fees pursuant to 28 C.F.R. § 16.11(c)(1) were due in the amount of $25 for search time already completed concerning his request," since "the FBI had exhausted the allowable two (2) hours of free search time, and had conducted approximately one additional hour of searching." *Id*. ¶ 21. The plaintiff was cautioned "that his request would be closed if he failed to pay the search fees within thirty (30) days from the date of its fee letter." *Id*.; *see id*., Ex. O at 1 ("This agency will not conduct any additional searching for responsive records for the subject of your FOIPA if payment is not received for search fees already incurred. Additional search fees will be assessed even if no additional records are located, and/or the records located are entirely exempted from disclosure pursuant to the FOIA."). Although staff "identified numerous potentially responsive records," they neither continued the search nor "review[ed] the identified records to determine responsiveness, because [p]laintiff failed to pay the fees billed in [the] January 21, 2015 letter." *Id*. ¶ 29. "The expiration date for either paying the $25 fee or responding to the fee letter was February 20, 2015," Defs.' Mem. at 2 n.1, and because the FBI did not receive the plaintiff's payment, it administratively closed FOIPA No. 1304654-000, Hardy Decl. ¶ 30.

At the time the FBI received the plaintiff's 2014 Privacy Act request for amendment of records, its staff did not realize that the FBI had adjudicated the same request in 2002. *Id*. ¶¶ 5, 31; *see id*., Ex. B. The plaintiff had been detained at the Indianapolis County Jail in January 1996, during which time he learned "that numerous documents were stamped with an accusatory

4

'warning' stating that he was a 'known,' infected person, or carrier of the dangerous and lethal virus AIDS/HIV." Am. Compl. at 9. For this reason, the plaintiff allegedly suffered "embarrassment, humiliation and mental suffering" after other prisoners read the warning, yet his "efforts to clarify this . . . issue" since 1997 were unsuccessful. *Id*. at 10. His request for "expunction of records indicating that [he] may be a 'known or suspected HIV (human immunodeficiency virus) infected person'" had been denied because the relevant records "are exempt from the amendment provision of the Privacy Act . . . pursuant to 5 U.S.C. § 552a(j)(2)." Hardy Decl., Ex. B (citing 28 C.F.R. § 16.96 (2001)).[3] Thus, the FBI took "no action on this duplicative [a]mendment request," not only because it had been "denied properly," but also because "it is time barred." *Id*. ¶ 31.

In addition to challenging the sufficiency of the defendants' responses to his 2012 and 2014 FOIA and the Privacy Act requests, the plaintiff alleges that the FBI tampered with his legal mail, *see* Am. Compl. at 13, "vandalized his personal computer [by] tampering with the software(s) and programs," and otherwise by "maliciously caus[ing] catastrophic damages to documents," *id*. at 17; *see id*. at 21. According to the plaintiff, the FBI took possession of his personal computer, read the draft of the manuscript, and thereafter "tamper[ed] with computer software(s), program(s), document(s) and manuscript editing and delet[ed the manuscript] as cover-up." *Id*. at 21. (emphasis removed). These events allegedly occurred after the plaintiff's arrest by FBI agents in December 1995 and after the FBI "requested authorization" and the plaintiff granted permission "to search and read his personal computer's software(s), program(s),

---

[3] Notwithstanding the denial of the plaintiff's amendment request, FBI Headquarters staff "instructed all field offices to insert a 'Letter Matter of Record' into any of [the p]laintiff's files that contained 'cautionary' statements that [p]laintiff was, or potentially was, infected with HIV, to document [the p]laintiff's opposition to the HIV 'cautionary' warning statement." Hardy Decl. ¶ 5 n.3; *see* Am. Compl., Ex. H.

5

document(s), manuscript(s) and nearly 40 Floppy Diskette(s), back-up drives." *Id*. at 16. Although the plaintiff authorized the FBI to inspect documents, he later learned "that the FBI had vandalized his personal computer." *Id*. at 17. According to the plaintiff he "spent five . . . years conducting and writing" the manuscript, and invested $15,000 in his personal computer and related equipment, as well as "professional services of editing and typing." *Id*. at 21. He considered "[a]ll the computer items . . . 'proprietary,'" and alleged that "the FBI was not authorized to vandalize and tamper with" the equipment or the manuscript. *Id*. at 22. The plaintiff deems these actions violations of his rights to due process and equal protection of the law, *id*. at 22, for which he demands actual damages of $15,000, compensatory damages of $500,000, and punitive damages of $25,000, *id*. at 24; *see also id*. at 24-26; Pl.'s Resp. and Opp'n to Defs.' Mot. for Summ. J . and Mem. ("Pl.'s Opp'n"), ECF No. 47 at 26-27, 32-33, 39-40.

II. LEGAL STANDARDS

    A. FOIA

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In FOIA cases, 'summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)). Indeed, the D.C. Circuit has observed that

6

"the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative,* 641 F.3d 521, 527 (D.C. Cir. 2011).

Upon receiving a FOIA request, federal agencies are "required to perform more than a perfunctory search" to identify potential responsive records. *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011). Instead, the D.C. Circuit has succinctly summarized the agency's burden, stating that an "agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," which it can do by submitting "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d at 57, 68 (D.C. Cir. 1990) (alterations in original)). The agency fails to meet this burden such that summary judgment is inappropriate when the agency fails to set forth the search terms and the type of search performed with specificity or otherwise provides "no information about the search strategies of the [agency] components charged with responding to [a] FOIA request" and no "indication of what each [component's] search specifically yielded." *Id*. at 403 (quoting *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007)).

In addition to demonstrating the adequacy of the search, the agency must "demonstrate that the records have not been improperly withheld." *Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 874 F.3d 287, 288 (D.C. Cir. 2017) (internal quotation omitted). An agency may carry its burden of showing an exemption was properly invoked by submitting sufficiently detailed affidavits or declarations, a Vaughn index of the withheld documents, or

both, to demonstrate that the government has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption to enable the adversary system to operate. *See, e.g., Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am.*, 455 F.3d at 287)).

B. The Privacy Act

"The Privacy Act regulates the collection, maintenance, use, and dissemination of information about individuals by federal agencies." *Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008) (internal quotation marks and citations omitted). An individual may request access to and amendment of an agency's records or information in a system of records pertaining to him. *See* 5 U.S.C. § 552a(d)(2). That individual may file a civil action against the agency which "makes a determination . . . not to amend an individual's record in accordance with his request," *id*. § 552a(g)(1)(A). When the agency's actions are determined to be willful or intentional, actual damages sustained by the individual as a result of the agency's failure to maintain its records with the requisite level of accuracy may be awarded, as well as the costs of the action and attorney fees. *Id*. § 552a(g)(4).

An action under the Privacy Act "may be brought . . . within two years from the date on which the cause of action arises[.]" *Id*. § 552a(g)(5). Ordinarily, "the cause of action does not arise and the statute of limitation does not begin to run until the plaintiff knows or should know of the alleged violation." *Tijerina v. Walters*, 821 F.2d 789, 798 (D.C. Cir. 1987). Where a plaintiff alleges a violation of the Privacy Act's amendment provision, *see* 5 U.S.C. § 552a(d)(2), he is required to exhaust his administrative remedies prior to filing a civil action, *see id*. § 552a(g)(1)(A), such that the limitations period begins to run when the agency denies his request to amend its records, *see Bassiouni v. FBI*, No. 02 C 8918, 2003 U.S. Dist. LEXIS 17136, at

8

*13-14 (N.D. Ill. Sept. 26, 2003); *Blazy v. Tenet*, 979 F. Supp. 10, 18 (D.D.C. 1997), *aff'd*, No. 97-5330, 1998 U.S. App. LEXIS 1291 (D.C. Cir. May 12, 1998) (per curiam). Once the limitation period has ended, the Court no longer may entertain the claim. "Because the statute of limitations is a condition of the sovereign's consent to be sued, failure to file suit within two years of the time that plaintiff learns of the violation of the statute 'deprives the federal courts of subject matter jurisdiction over the action.'" *Szymanski v. U.S. Parole Comm'n*, 870 F. Supp. 377, 378 (D.D.C. 1994) (quoting *Diliberti v. United States*, 817 F.2d 1259, 1262 (7th Cir. 1987)).

## III. DISCUSSION

The plaintiff's claims regarding his FOIA requests are addressed first, followed by his Privacy Act claim and various tort claims.

### A. The Plaintiff's FOIA Claim[4]

The defendants contend they are entitled to summary judgment on the plaintiff's FOIA claim because the FBI's search for records responsive to the 2014 FOIA request, FOIPA No. 1304654-000, was reasonable and adequate. *See* Defs.' Mem. at 5-6. As support, the FBI's declarant describes at length the agency's Central Records System ("CRS") and the index method by which staff conducted the search, using variations of the plaintiff's name as search terms. *See generally* Hardy Decl. ¶¶ 22-29. It is apparent that the FBI did not complete the search. Rather, once its staff "had exhausted the allowable two . . . hours of free search time, and

---

[4] The supporting declaration is silent as to the search for records responsive to the plaintiff's 2012 FOIA request, FOIPA No. 1193637-000. Nevertheless, the FBI produced an unredacted copy of plaintiff's passport, *see* Hardy Decl., Ex. G, and the plaintiff nowhere challenges the adequacy of the FBI's search for or the release of a copy of his passport. Thus, no dispute appears to pertain to the FBI's compliance with its FOIA obligations with respect to the 2012 FOIA request.

had conducted approximately one additional hour of searching," the FBI halted the search. Hardy Decl. ¶ 21. Agency regulations authorize the assessment of search fees, *see* 28 U.S.C. § 16.10(c)(1), and the FBI need not have continued its search unless or until it received the plaintiff's payment, *see* 28 C.F.R. § 16.10(e)(2). Thus, the FBI appropriately issued the January 21, 2015 letter advising the plaintiff of the assessed search fee of $25 and of his right to file an administrative appeal. *See* Hardy Decl., Ex. O at 2.

The expected argument, as the FBI's declarant asserts, *see* Hardy Decl. ¶¶ 30, 32, is that the plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. A FOIA "requester may generally seek judicial review of his FOIA request only after he has exhausted all administrative remedies." *Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir. 1995) (citation omitted), *cert. denied*, 516 U.S. 843 (1995); *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam). Exhaustion is not a jurisdictional requirement, *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003), but instead is a prudential consideration, *Wilbur*, 355 F.3d at 677. It "does not occur until the required fees are paid or an appeal is taken from the refusal to waive fees." *Oglesby*, 920 F.2d at 135. If the requester does not take one of these steps, his claim is subject to dismissal. *See Trueblood v. U.S. Dep't of the Treasury*, 943 F. Supp. 64, 68 (D.D.C. 1996).

According to the plaintiff, he did file a timely administrative appeal (AP-2015-02481) on February 22, 2015. Pl.'s Opp'n at 53; *see id.*, Ex. K (ECF No. 47-1 at 60-70). The outcome of the appeal is unknown, and the defendants have not addressed this issue in their summary judgment motion or reply. Nevertheless, the FBI has an alternate basis for its actions.

An agency "may require advance payment of any fee [if] the requester has previously failed to pay fees in a timely fashion[.]" 5 U.S.C. § 552(a)(4)(A)(v); *see* 28 C.F.R. § 16.10(i)(3)

10

("Where a requester has previously failed to pay a properly charged FOIA fee to any component or agency within 30 calendar days of the billing date, a component may require that the requester pay the full amount due . . . , and the component may require that the requester make an advance payment of the full amount of any anticipated fee before the component begins to process a new request or continues to process a pending request or any pending appeal."). The FBI is entitled to refuse to perform any additional work on the plaintiff's FOIA request because he had not paid the $20.10 still owed from the release of records in June 2000 in response to FOIPA No. 430046-001. *See Trenerry v. IRS*, 78 F.3d 598 (10th Cir. 1996) (10th Cir. Mar. 1, 1996) (Table); *Saldana v. Fed. Bureau of Prisons*, 715 F. Supp. 2d 10, 21 (D.D.C. 2010); *Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 555 F. Supp. 2d 16, 23 (D.D.C. 2008) (finding summary judgment is appropriate when the plaintiff has failed to comply with agency fee regulations). The plaintiff is not entitled to avoid his fee obligations by filing a lawsuit. *Accord Hall v. CIA*, 2003 U.S. Dist. LEXIS 26398, *7-8 (D.D.C. Nov. 13, 2003) (finding that "plaintiff has constructively abandoned his request for documents by refusing to commit to pay for the searches he requested," relieving agency of obligation to provide the documents and granting summary judgment to agency). Accordingly, the FBI is entitled to summary judgment on this claim.

    B. Plaintiff's Privacy Act Claim

The parties agree that the plaintiff learned of the "accusatory 'warning'" regarding his HIV status while the plaintiff was detained at the Indianapolis County Jail in January 1996. Am. Compl. at 9; Defs.' Mem. at 7. The plaintiff then submitted a formal amendment request to the FBI, which request was denied by the FBI. *See* Hardy Decl., Ex. B. On February 13, 2002, the OIP affirmed the FBI's decision to deny amendment of agency records by expunging records

11

indicating that the plaintiff is known or suspected of having been infected with HIV. *Id*. Thus, the two-year statute of limitations applicable to Privacy Act claims would have expired on or about February 13, 2004. Accordingly, the Court concludes that the plaintiff's Privacy Act claim is time-barred.

Even if the plaintiff's Privacy Act claim had been timely filed, the plaintiff fails to demonstrate that he is entitled to damages. A plaintiff who proves an intentional or willful violation of the Privacy Act also must prove some actual damages before he is entitled to the statutory minimum award of $1,000 under 5 U.S.C. § 552a(g)(4)(A). *See generally Doe v. Chao*, 540 U.S. 614, 620-25 (2004). The Court has reviewed the plaintiff's pleadings, opposition to the defendants' summary judgment motion and his other submissions, and identifies no support for an award of damages – actual or otherwise – arising from a purported violation of the Privacy Act. The defendants' motion for summary judgment with respect to the plaintiff's Privacy Act claim is granted.

C. The Plaintiff's Tort Claims

Scattered amongst the plaintiff's disorganized and ever-shifting factual allegations are tort claims, none of which survive. First, the plaintiff is a prisoner who may not bring a civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The plaintiff alleges emotional injuries, *see, e.g.,* Am. Compl. at 10, 14, but neither alleges nor shows a prior physical injury resulting from the FBI's actions. Consequently, the plaintiff is not entitled to damages for emotional distress. *See Miller v. Bock*, 55 F. App'x 310, 312 (6th Cir. 2003) (finding that prisoner "cannot maintain his claim for money damages to compensate him for the defendants' failure to expunge inaccurate

information from his prison file" because he "has not alleged, nor has he shown, a prior physical injury resulting from the defendants' alleged actions").

Second, the plaintiff's property, *see, e.g.*, Am. Compl. at 16-17, 21-22, and constitutional tort claims, *see, e.g., id*. at 15, 22, cannot proceed because they are barred under the doctrine of sovereign immunity. Generally, the United States is immune from suits for damages unless there is an express waiver of that immunity. *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). The Federal Tort Claims Act ("FTCA") is an example of a waiver of the federal government's immunity, albeit with limitations and exceptions. For example, "the United States has not waived sovereign immunity with respect to actions for damages based on violations of constitutional rights by federal officials, whether brought against the United States directly . . . , or against officers sued in their official capacities." *Hamrick v. Brusseau*, 80 F. App'x 116, 116 (D.C. Cir. 2003) (per curiam) (citations omitted); *see Meyer*, 510 U.S. at 478.

The defendants assert that the plaintiff's "claims are largely premised on a theory of a tortious taking of 'proprietary' property" falling "plainly within the scope of the intentional tort exception" to the FTCA, Defs.' Mem. at 15, presumably referring to 28 U.S.C. § 2680(h):

> The [FTCA] shall not apply to —
>
> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.

28 U.S.C. § 2680(h). The defendants' motion is short on discussion, and it is not clear which of the six enumerated torts covers the taking of or damage to the plaintiff's property.[5] Nevertheless, the plaintiff faces an additional bar to recovery under the FTCA.

"In order to maintain an action under the FTCA, plaintiff must have exhausted his administrative remedies by 'first present[ing] the claim to the appropriate Federal agency. . . .'" *Mallory v. U.S. Dep't of Housing & Urban Devel.*, No. 13-0367, 2014 U.S. Dist. LEXIS 24253, at *3 (D.D.C. Feb. 26, 2014) (quoting 28 U.S.C. § 2675(a)). Here, the plaintiff does not show that he has presented his tort claim to the appropriate federal agency, and his failure to do so deprives this Court of subject matter jurisdiction, *see McNeil v. United States*, 508 U.S. 106, 113 (1993).

III. CONCLUSION

The Court concludes that the FBI complied with its obligations under the FOIA, that the plaintiff's Privacy Act claim is time-barred, and that the Court lacks subject matter jurisdiction over the plaintiff's tort claims. Accordingly, the Court grants the defendants' motion and denies the plaintiff's motions as moot. An Order is issued separately.

DATE: February 12, 2018         /s/ *Beryl A. Howell*
                                BERYL A. HOWELL
                                Chief Judge

---

[5] If, as the defendants suggest, the plaintiff's vague assertion that the defendants "maliciously and with gross reckless [sic] introduced false information in his medical record," *see* Defs.' Mem. at 13, can be construed as a fraud claim, it is barred under 28 U.S.C. § 2680(h). *See, e.g., Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 126 (D.D.C. 2016).